UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| JOHN P. CATTANO, | ) | Case No. 12-62294 |
| | ) | |
| _____Debtor._____ | ) | |
| | ) | |
| W. CLARKSON MCDOW, JR., | ) | |
| United States Trustee For Region Four, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | Adversary Proceeding |
| v. | ) | Case No._____ |
| | ) | |
| JOHN P. CATTANO, | ) | |
| | ) | |
| _____Respondent._____ | ) | |

**COMPLAINT TO DENY DISCHARGE**

W. Clarkson McDow, Jr., United States Trustee for Region Four, by counsel, objects to

the discharge of John P. Cattano and in support thereof states as follows:

1.      Plaintiff is the United States Trustee for Region Four.[1]

2.      On October 5, 2012, John P. Cattano (the "Debtor"), commenced Chapter 7 Case

No. 12-62294 by filing with this Court a voluntary petition for relief under chapter 7 of the

Bankruptcy Code.  The Debtor's chapter 7 case is still pending before this Court, and this

adversary proceeding is timely filed.

---

[1] The United States Trustee is a Department of Justice official charged with, among other things, supervising bankruptcy case administration.  28 U.S.C. § 586(a)(3).  United States Trustees "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena." H.R. Rep. No. 95-595, at 88 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6049; *In re A-1 Trash Pickup, Inc.*, 802 F.2d 774, 775 (4th Cir. 1986).  The United States Trustee is authorized to file a complaint objecting to the Debtor's discharge.  11 U.S.C. § 727(c)(1).

3.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157 and 1334.

4.      The statutory predicate for this complaint is 11 U.S.C. § 727.

5.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7.      After the commencement of the Debtor's chapter 7 case, the United States Trustee

appointed William F. Schneider to serve as the Debtor's chapter 7 trustee.

8.      The Debtor is an attorney with over 20 years of experience.

9.      Prior to the bankruptcy filing, the Debtor and Caroline V. Davis f/k/a Caroline D.

Bragg owned Cattano Law Firm, P.C.   The firm had two shareholders (the Debtor and Ms.

Davis) and one associate named Christopher L. Smith.   The firm also employed a paralegal

/office manager/legal assistant named Robin Walton.   Upon information and belief, the Debtor's

wife also received income from Cattano Law Firm, P.C.

10.     In 2008, a dispute arose regarding the disposition of firm assets.   On October 24,

2008, Ms. Davis filed a lawsuit against the Debtor in the Circuit Court for Albemarle County,

Virginia.

11.     Five days after Ms. Bragg filed the suit against the Debtor, the Debtor

incorporated the Cattano Law Group, P.C.

12.     The Cattano Law Group, P.C. effectively was the Cattano Law Firm, P.C. except

that Ms. Davis was not a shareholder (or employee) and, eventually, it employed a second

associate named Dustin Rosser.

13.     In the state court lawsuit, the jury found in Ms. Davis' favor on a derivative

conversion claim and awarded the Cattano Law Firm, P.C. $234,412.18, of which the jury

specified that 27.35% should go to Ms. Davis.  The Circuit Court also awarded attorneys' fees

and costs totaling $289,228.71 after conducting a bench trial on that matter on December 28,

2010.  The Circuit Court entered its final judgment order on January 12, 2011.

14.     The Debtor began consulting with bankruptcy counsel in December 2010.

15.     After the bench trial, but five days before the Circuit Court for Albemarle County,

Virginia entered its final judgment order, the Debtor effectively caused Central Virginia

Litigation, PLC to be incorporated.

16.     Christopher L. Smith, the former associate of Cattano Law Firm, P.C. and Cattano

Law Group, P.C., is nominally the 100% shareholder of Central Virginia Litigation, PLC

("CVL").

17.     CVL effectively is the Cattano Law Group, P.C. except that Mr. Smith is

nominally the sole owner.

18.     The Debtor is and has always been the actual party in control of CVL.

19.     The Debtor uses, enjoys, and controls CVL as his own; the Debtor is, upon

information and belief, the beneficial owner of CVL.

20.     Upon information and belief, CVL is a dummy corporation created to conceal the

Debtor's interest in the law practice he controls as well as the income therefrom, and Mr. Smith

is a straw owner.

21.     Upon information and belief, the Debtor has concealed his interest in his law

practice to hinder, delay, and/or defraud his creditors.

22.      Upon information and belief, the Debtor has concealed his interest in his law

practice to hinder, delay, and/or defraud his chapter 7 trustee.

23.     Pursuant to the *Declaration Concerning Debtor's Schedules* and the *Declaration Under Penalty Of Perjury By Individual* at the end of the Statement of Financial Affairs, the Debtor swore that the information contained in the Schedules and Statement of Financial Affairs was true and correct.   As provided in 28 U.S.C. § 1746, the declarations contained in the *Declaration Concerning Debtor's Schedules* and the *Declaration Under Penalty Of Perjury By Individual* at the end of the Statement of Financial Affairs had like force and effect as an oath.

24.     The Debtor testified under oath at the creditors' meeting conducted by Mr. Schneider.

25.     Among other things, the Debtor gave the following sworn testimony at his creditors' meeting:

      a.     that he signed his petition and Schedules;

      b.     that he reviewed his Schedules before he signed them;

      c.     that the information in the Schedules was accurate;

      d.     that he listed all of his assets;

      e.     that other than amending the response to question 1 of the Statement of Financial Affairs to increase the amount by $1,500.00, he was not aware of any other statements in his documents that needed to be corrected;

      f.     that everything he owned was listed in his Schedules;

      g.     that he is not an owner of CVL;

      h.     that Mr. Smith decides when and whether the Debtor gets a bonus from CVL;

      i.     that Mr. Smith has input in the Debtor's salary;

j.     that Mr. Smith and the Debtor get together and decide what the Debtor's bonus is going to be;

k.     that he has "no interest in being in ownership of any law firm, having any responsibilities with any law firm" and that as a result of the litigation with Ms. Davis "[he] just had had enough of any ownership interest and responsibilities with any law firm, and therefore did not want any ownership interest in any law firm";

l.     that other than contributions to a church or charity, he did not sell, transfer, or give away anything of value within a year before filing the petition; and

m.     that he did not pay any debts of his kids.

26.     The Debtor did not list all of the property in which he has an interest on his Schedules or accurately disclose his income and expenses.  Upon information and belief and by way of example and not limitation, the Debtor: (1) did not disclose his beneficial interest in CVL; (2) did not disclose $818.00 in cash until his second amended Schedule B despite having cashed a check for such amount the day before commencing this case; (3) did not disclose any amounts owed to him by his children; (4) did not disclose reimbursements received from CVL and/or payments made by CVL on his behalf; and (5) did not accurately disclose his expenses on Schedule J including, but not limited to, the expenses on lines 2, 4, 9, 10, and 17.

27.     The Debtor did not disclose certain gifts made to family members and/or payment of debts on their behalf on his Statement of Financial Affairs.  The Debtor did not disclose certain gifts made to family members and/or payment of debts on their behalf on his first amended Statement of Financial Affairs.

28.     Upon information and belief, the Debtor disclosed certain gifts made to family members and payment of his son's rent on his second amended Statement of Financial Affairs before producing to Ms. Davis certain financial records that evidenced the gifts.

29.     Upon information and belief, the Debtor knowingly made false statements at his creditors' meeting.

30.     Upon information and belief and by way of example and not limitation, the testimony identified in paragraph 25(c) – (m) was false.

31.     Upon information and belief, the Debtor has testified deceptively and/or untruthfully concerning his relationship with CVL and his control over his income.

32.     The Debtor has filed several amended Schedules and Statements.

33.     The Debtor filed certain amended Schedules and/or Statements after the truthfulness of such Schedules and/or Statements were called into question and/or the falsity thereof was about to be revealed.

34.     Upon information and belief, before signing and filing his Schedules and Statement of Financial Affairs, the Debtor did not review financial records and/or take other reasonable and adequate measures to insure the accuracy of his Schedules or Statement of Financial Affairs.

35.     On January 3, 2013, the Debtor testified under oath at a Rule 2004 examination that, among other things:

      a.     the net income on Schedule J was not accurate;

      b.     he determined his expenses on Schedule J by just thinking about them;

      c.     he did not review financial records or do "the back-up research" prior to signing the declaration concerning his Schedules and filing his Schedule J;

d.      he did not know where the figure of $2,500.00 for credit card payments on

line 17 of Schedule J came from and that such amount was not accurate;

e.      that the expense on line 10 was overstated and needed to be adjusted;

f.      he had not included all expenses on his Schedule J;

g.      that he was not an owner of CVL;

i.      he prepares the checks for CVL, and Mr. Smith merely signs them;

j.      CVL pays the Debtor's cell phone bill;

k.      that he understood at the time he signed the declaration concerning his

Schedules that he was signing it under the penalty of perjury; and

l.      that he expects his children to repay him for amounts he has given them

to help open a business.

### Count I – Continuing Concealment

36.     The allegations contained in paragraphs 1-35 are incorporated by reference.

37.     "Continuing concealment sufficient to bring transfers within the one year

statutory period of 11 U.S.C. § 727(a)(2)(A), may be found when the debtor transfers legal title

to property outside the one year period, but retains a beneficial or equitable interest in the

property into the one year period.  Matter of Kauffman, 675 F.2d 127, 128 (7th Cir. 1981);

Matter of Vecchione, 407 F. Supp. 609 (E.D. N.Y. 1976); In re Hooper, 39 B.R. 324, 327

(Bankr. N.D. Oh. 1984); Matter of Ries, 22 B.R. 343 (Bankr. W.D. Wis. 1982); In re Smith, 11

B.R. 20 (Bankr. N.D. Oh. 1981).   If the debtor continues to use, enjoy and control the property

transferred as if the property remains his own, then he retains a beneficial interest in the property.

In re Cadarette, 601 F.2d 648 (2nd Cir. 1979); Matter of Vecchione, 407 F. Supp. at 617." In re

Syrtveit, 105 B.R. 596, 599 (Bankr. D. Mont. 1989); *See also* Green v. Toy, 171 F.2d 979 (1st

Cir. 1949) (denial of discharge for continuing concealment when the debtors used a dummy corporation and straw owners to conceal assets).

38.    Upon information and belief, the Debtor concealed his interest in his law firm on or about January 7, 2011, and he continues to conceal such interest.

39.    Upon information and belief, the Debtor has continued to conceal his interest in his law firm with the intent to hinder, delay, and/or defraud his creditors and/or trustee.

40.    The Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2).

<u>Count II – False Oaths</u>

41.    The allegations contained in paragraphs 1-40 are incorporated by reference.

42.    Under penalty of perjury, defendant certified Schedules and Statements filed herein were true and correct to the best of his knowledge, information and belief, when in truth and fact, as the Debtor well knew and/or should have known, the Schedules and Statement of Financial Affairs failed to accurately disclose all property, income, expenses, and/or gifts to family members.

43.    Under oath, the Debtor testified at his creditors' meeting that his Schedules and Statements filed herein were true and correct (with the one correction to the response to question 1 of the Statement of Financial Affairs), when in truth and fact, as the Debtor well knew and/or should have known, the Schedules and Statement of Financial Affairs failed to accurately disclose all property, income, expenses, and/or gifts to family members.  The Debtor also testified that he had not paid the debts on any of his kids when he knew or should have known that he had.

44.    Under oath, the Debtor testified at his creditors' meeting that he was a mere employee of CVL, that Mr. Smith owned CVL, and, effectively, that Mr. Smith controlled his

income when he knew and/or should have known that he was the beneficial owner of the company by virtue of his use, enjoyment, and control over the company and that the Debtor controlled his own income.

45.     The Debtor knowingly and fraudulently made the false oaths identified in this complaint.

46.     Courts have also recognized that a "'reckless indifference to the truth' constitutes the 'functional equivalent of fraud.'" Hatton v. Spencer (In re Hatton), 204 B.R. 477, 484 (E.D.Va. 1997) (*citing* In re Johnson, 139 B.R. 163, 164 (Bankr. E.D.Va. 1992).

47.     The Debtor's conduct in this case demonstrates a reckless disregard for the truth.

48.     The Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4).

### Count III – Unexplained Loss Of Assets

49.     The allegations contained in paragraphs 1-48 are incorporated by reference.

50.     At his creditors' meeting, the Debtor testified his income had not been unusually high prior to his filing.

51.     The Debtor's Schedule J reflected a net monthly income of approximately $5,000.00.

52.     When the chapter 7 trustee asked the Debtor "If you've been generating that kind of surplus every month since the beginning of the year, why isn't there any money in any bank account?", the Debtor replied, "We help our kids a lot." The chapter 7 trustee then said, "But you've also said that you didn't give the children any gifts. There's no transfers of any significant funds. How do you help your kids?", the Debtor testified, "We, on occasion, we'll help them. I thought the question was, Do we pay any of their debts? No. But again, I could go try to figure it out. I don't know the answer to that question."

53.     The Debtor has failed to adequately explain what has become of his surplus income.

54.     The Debtor has earned a substantial, six figure income for a number of years and the scheduled value of his house is $468,800.00.  Despite his income, he claims his interest in household goods and furnishings is worth less than $2,000.00.

55.     Upon information and belief, the Debtor and his wife have certain credit cards. The Debtor paid those credit cards prepetition.

56.     Upon information and belief, in November 2011, the Debtor and/or the Debtor's wife purchased a sewing/embroidery machine with a credit card for approximately $5,000.00. When asked about the transaction at the Rule 2004 examination, the Debtor responded, "Oh, she bought um, that's I think when **we**, when was it? . . . I believe that would have been, I think, ah she bought a high end . . . Bernina."

57.     The Debtor has not scheduled an interest in the property acquired with the credit cards that he pays, or otherwise adequately explained what has become of such assets.

58.     There is a deficiency of in the value of assets.

59.     The Debtor has failed to explain satisfactorily any loss of assets or deficiency of assets to meet his liabilities.

60.     The Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(5).

WHEREFORE, W. Clarkson McDow, Jr., by counsel, respectfully requests this Court deny the Debtor a discharge pursuant to 11 U.S.C. §§ 727(a)(2), (4), and/or (5).

Date: January 25, 2013                    Respectfully submitted,
                                          W. Clarkson McDow, Jr., United States Trustee
                                          for Region Four

By: /s/ W. Joel Charboneau
W. Joel Charboneau (VSB #68025)
210 First Street, S.W., Suite 505

Roanoke, Virginia 24011
Telephone: (540) 857-2699

<u>Certificate of Service</u>

   I certify that on January 25, 2013, I caused the foregoing to be electronically filed in the United States Bankruptcy Court for the Western District of Virginia.

<u>/s/ W. Joel Charboneau</u>